UNITED STATES of America ex rel. Leroy SMITH, Jr., Petitioner-Appellant,

v.

Michael P. LANE, Respondent-Appellee.

No. 85–2091.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 21, 1986.

Decided June 24, 1986.

Susan G. Feibus, Chicago, Ill., for petitioner-appellant.

Sally L. Dilgart, Criminal Appeals Div., Ill. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before BAUER, WOOD and EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Illinois state prisoner Leroy Smith, Jr. appeals from the district court's denial of his petition for a writ of habeas corpus, 609 F.Supp. 656, filed pursuant to 28 U.S.C. § 2254. Smith challenges his 1977 convictions for attempted murder and possession of cannabis on Sixth Amendment grounds, arguing that he received "court-induced" ineffective assistance of counsel at trial. In particular, Smith contends the state trial court committed constitutional error by denying Smith's counsel a continuance which Smith claims was necessary to provide adequate time for pretrial preparation. We affirm the district court's denial of Smith's petition.

## I. FACTS

### A.

Smith's claim is based upon the facts surrounding his trial attorney's preparation for the trial, so we need only summarize the facts of Smith's crimes. On the evening of December 15, 1974, Chicago police officers learned that marijuana [1] was being sold through a window in Smith's apartment. The police then made an undercover purchase of the marijuana from Smith's bedroom window. Shortly thereafter five plainclothes officers surrounded the apartment. Two approached the front door, announced that they were police, and demanded entry. Receiving no response, one officer opened the screen door to knock again, all the while hollering "Police officers! Open up!" and was met with a gunshot from inside the door, which was followed seconds later by gunfire from Smith's bedroom window. The officers returned fire.

Numerous marked police cruisers with blue lights flashing and sirens wailing arrived on the scene, and the police again identified themselves and called for a cease-fire. This resulted in additional gunfire from within the home. Following another police identification and request for ceasefire, another shot through the front

---

1. We recognize that the Supreme Court has, for some time, been divided over whether "marijuana" or "marihuana" is the correct spelling. We note, however, that the Court has apparently settled upon "marijuana;" thus, we shall use that spelling. *Compare* Mauro, *Has High Court's Spelling Gone to Pot?*, 8 Nat'l L.J. (No. 31), April 14, 1986, at 3, 6 (tracing the history of the spelling controversy) *with* Lauter, *Joint Decision Ends Question on Spelling,* 8 Nat'l L.J. (No. 34), May 5, 1986, at 27 (including comments of Supreme Court Reporter of Decisions Henry C. Lind).

door caused a shotgun held by an officer to explode, wounding three officers. Finally, the police succeeded in gaining entrance to the apartment, approximately thirty minutes after the gunplay began.

Both in his confession and at trial, Smith admitted firing a .22 caliber magnum revolver and .45 caliber semiautomatic carbine at the police. In his confession Smith admitted firing a .357 magnum out the front door (the shot that caused the shotgun held by a police officer to explode). When the police found Smith in his bedroom, he had a loaded semiautomatic carbine and a .22 caliber revolver. The police also seized a marked $5 bill (used by the undercover officer in the earlier drug purchase), forty-nine envelopes containing 222 grams of marijuana, cigarette wrapping paper, ammunition clips, and nine empty ammunition cartridges. In his confession Smith admitted selling marijuana, although at trial he changed his story.

Smith claimed that he reasonably believed that he was defending his dwelling from unknown invaders. A paraplegic as a result of a 1973 gunshot wound, Smith claimed that he lived in a dangerous neighborhood. Although he admitted firing shots, Smith claimed he did not aim at anyone. Smith's mother, a defense witness, corroborated Smith's account that the occupants of Smith's apartment[2] did not hear the police officers identify themselves, did not see the numerous police cruisers with flashing blue lights, and did not hear the sirens.

Defendant Smith was tried before a jury and convicted of three counts of attempted murder and one count of possession of marijuana. The state trial court sentenced him to a term of four to ten years for attempted murder and a concurrent term of one to three years for possession of marijuana.

### B.

The Illinois Appellate Court found the following facts relevant to Smith's "court-induced" ineffective assistance of counsel claim.[3] Defendant Smith was arraigned on May 8, 1975, at which time retained counsel Sam Adam entered his appearance. Between the arraignment and February 25, 1977, Smith's trial was continued twenty-two times. Seventeen of the continuances were on Smith's motion.

On February 25, 1977, Alan Blumenthal, an associate of Sam Adam, appeared before the court and requested a twenty-third continuance. Blumenthal informed the court that he had been retained to represent Smith, but was unprepared for trial because he only entered the case one week earlier. According to Blumenthal, a former associate of Sam Adam named Laurence Wolf Levin had prepared the case. Blumenthal admitted that he had examined the case file over the past week in preparation for "second-chairing" the trial with Levin. Blumenthal contended that his trial strategy as lead counsel would differ from Levin's. In particular, he disagreed with Smith's jury waiver, sought to obtain unspecified physical evidence, and wanted to add certain unspecified witnesses to Smith's witness list.

The trial court denied the motion. The court stated:

> Let the record show that this case has dragged on in this court almost two years. There were approximately thirty [sic] continuances. That the last six or seven continuances were with subpoenas for trial. There has been an appearance

---

**2.** According to Smith, at the time of the gunfight his father, mother, four sisters, two nieces, two nephews, and a cousin were in his apartment.

**3.** A state court's conclusion that a defendant received effective assistance of counsel "is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d)." *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). Both the performance and the prejudice components of the *Strickland* test are mixed questions of law and fact. *Id.* Nevertheless, state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d). *Id.* Federal district court findings of fact are subject to the clearly erroneous standard of Fed.R.Civ.P. 52(a). *Id.*

in the file in the name of Levin who denies that is his signature. When Mr. Levin appeared in this court, he indicated to the Court he is not the attorney, that he would have cleared it with Mr. Adams [sic] who is the attorney of record. That the Court inquired of the defendant as to whom he retained and he indicated Mr. Adams, and the Court endeavored to get Mr. Adams to begin since the 15th of February when the case was set here with subpoenaes, and Mr. Adams chose not to come in.

That Mr. Blumenthal indicated he was willing to file an appearance in the case and the Court suggested that the only way he would accept the appearance would be with a substitution of attorneys, and that substitution of attorneys was presented to this Court this morning, and that the Court granted defendant leave to withdraw his waiver of trial by jury and agreed to give the defendant a trial by jury.

Because of numerous delays in this case, the Court refuses to grant any further continuances and the Court is holding this case for trial now. There is a jury out there. Let the record show Mr. Blumenthal is out of the same offices with Mr. Adams and Mr. Levin.

The trial court permitted Smith to withdraw his jury waiver and informed Blumenthal he could add to the witness list any new witnesses he desired. The court also continued the case for two days, to the following Monday. Blumenthal conceded the continuance was "more advantageous" than starting immediately, but reiterated that he needed at least a three-week continuance. Smith's trial began on Monday, February 28, 1977, and on March 8, 1977, the jury returned guilty verdicts on three counts of attempted murder and one count of possession of marijuana. On February 3, 1983, the Illinois Appellate Court affirmed Smith's conviction. On August 23, 1983, Smith filed his petition for writ of habeas corpus, and both parties subsequently filed motions for summary judgment. On May 6, 1985, Judge Bua denied Smith's petition.

## II. DISCUSSION

Smith raises only one issue—whether the state trial judge's denial of Blumenthal's motion for a continuation caused Blumenthal's representation of Smith to be so ineffective as to violate the Sixth Amendment. In particular, Smith alleges that, without the continuation, Blumenthal had insufficient time to adequately investigate and prepare for Smith's trial. Smith challenges only the actions of the trial court, not the actions and omissions of his trio of attorneys, Adam, Levin, and Blumenthal. Smith characterizes Blumenthal as a "zealous advocate at trial" who demonstrated "considerable abilities" as a trial advocate. Therefore, we need only look at the actions of the state trial court.

■■■■ The Sixth Amendment guarantees a right to effective assistance of counsel, and "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To reverse a conviction, a defendant must show (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *Id.* at 687, 104 S.Ct. at 2064. The "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696, 104 S.Ct. at 2069. The Supreme Court noted in *Strickland* that in cases where "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. at 2069. Because this is such a case, we need not consider whether Blumenthal's performance (as allegedly induced by the trial court) was deficient.

Smith argues that the prejudice resulting from the trial court's denial of his motion for a continuance manifested itself in several ways. The court denied his suppres-

sion motions, filed during the trial, as untimely. Smith claims that Blumenthal did not have an opportunity to interview Smith's witnesses or conduct an independent search for new witnesses to support Smith's defense. Smith has submitted affidavits of ten alleged witnesses to the shootout, none of whom testified at trial. Smith concludes that, had his attorney had more time to investigate and prepare for the case, he would have presented a significantly stronger defense at trial; therefore, he contends, there is a reasonable probability that his trial counsel's court-induced inability to investigate and prepare affected the outcome of Smith's case.

 In evaluating Smith's claim, it is important to keep in mind how the Supreme Court defined prejudice in *Strickland*. Smith must show more than that "the errors had some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at 2067. To prevail, Smith must "show that there is a reasonable probability that, but for counsel's [in this case court-induced] unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. The issue is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068. Considering the totality of the evidence before the jury in Smith's case, *id.* at 695, 105 S.Ct. at 2068, which showed that the verdict had "overwhelming record support," *id.* at 696, 104 S.Ct. at 2069, we conclude that Smith failed to meet "the burden of showing that the

decision reached would reasonably likely have been different absent the errors." *Id.*[4]

In reviewing the totality of the evidence underlying Smith's conviction, it is apparent that the government had a very strong case against Smith on the attempted murder charges. Smith conceded that he fired shots from inside the apartment, and that the exchange of gunfire lasted thirty minutes. The government presented evidence that numerous police cruisers, with lights flashing and sirens wailing, arrived at the scene following the initial gunfire. The evidence indicated that so many cruisers arrived in the neighborhood that a considerable traffic jam resulted. The state court found that "[t]he firing from inside persisted even after numerous police vehicles with sirens and blue lights converged on the scene." It is apparent that the government presented overwhelming evidence to refute Smith's defense that he did not know who had knocked on his door and was merely defending his dwelling.

Smith also concedes that, once the trial began, Blumenthal's representation was zealous and competent. Blumenthal had an opportunity the week before trial to review the file prepared by Levin in expectation of second-chairing the case, and interviewed Smith before the trial began. At trial, Blumenthal extensively cross-examined government witnesses, raised timely objections, and called Smith and his mother to testify. In short, Blumenthal's representation of Smith at trial indicated sufficient readiness to try the case. *See United States v. Phillips*, 640 F.2d 87, 92 (7th Cir.), *cert. denied*, 451 U.S. 991, 101 S.Ct.

---

4. We reject Smith's suggestion that we should presume prejudice in this case. We have recognized that

> [i]n rare cases, however, the refusal to allow counsel additional time to prepare might occur in circumstances so egregious that 'the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.'

*United States v. Rodgers*, 755 F.2d 533, 540 (7th Cir.1985) (quoting *United States v. Cronic*, 466

U.S. 648, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984)). In *Rodgers*, the defendant had new counsel appointed just two days before jury selection and four days before the trial commenced. 755 F.2d at 538–39. Nevertheless, the trial court denied the defendant's motion for a continuance, and we concluded that the circumstances were not "so horrendous as to raise a presumption of prejudice." *Id.* at 540. Likewise, Smith's case does not justify an assumption of "unfairness without considering whether there was actual prejudice." *Id.*

2331, 68 L.Ed.2d 851 (1981) ("Our examination of the record satisfies us that trial counsel's performance more than met minimum professional standards.").

The only issue we need decide, therefore, is whether the state trial court's denial of a continuance prejudiced Smith by denying his counsel an opportunity to interview and produce additional witnesses in Smith's defense. In *United States v. Rodgers*, 755 F.2d 533 (7th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985), we adopted the Fifth Circuit's test for evaluating such claims. *Id.* at 541 (citing *United States v. Miller*, 513 F.2d 791, 793 (5th Cir.1975)). The Fifth Circuit test provides that:

> [a] movant [for a continuance] must show that due diligence has been exercised to obtain the attendance of the witness, that substantial favorable evidence would be tendered by the witness, that the witness is available and willing to testify, and that the denial of a continuance would materially prejudice the defendant.

755 F.2d at 541.

Smith falls far short of meeting this standard. To begin with, the record raises serious questions about Blumenthal's due diligence in attempting to obtain the attendance of those "new" witnesses at Smith's trial. Of the seven family members and three neighbors who submitted affidavits accompanying Smith's habeas corpus petition, seven were listed on Smith's 1975 discovery answer witness list. Smith offers no explanation as to why Blumenthal did not interview the family members, who apparently lived with Smith, during the time immediately preceding the trial.[5] Moreover, the record suggests, as the district court found, that the decision to call only Smith and his mother as witnesses was not a result of lack of investigation, but rather "virtually unchallengeable" trial strategy. *See Strickland*, 466 U.S. at 690–

91, 104 S.Ct. at 2066. This is illustrated by the fact that, on the day of trial, affiant Leroy Smith, Sr. (the defendant's father) was at home and affiant Kenneth Smith (the defendant's brother) was in the courtroom hallway. It is inconceivable that Blumenthal, whom Smith praises as a "zealous" advocate, could not have, with the exercise of due diligence, interviewed these potential witnesses and called them at trial, had he thought their testimony helpful to Smith.

Furthermore, a review of the ten affidavits submitted by Smith leaves no doubt that, had all ten been called at trial, they would not have tendered the "substantial favorable evidence" required in *Rodgers*. One affiant on whose potential testimony Smith heavily relies in his petition is Ed Anderson, Smith's cousin. Anderson was called to testify at trial and asserted his Fifth Amendment privilege. Indeed, he concedes in his affidavit that he is "willing to relate these matters now because the Statute of Limitations has run as to any crime with which I could have been charged." Therefore, no amount of pretrial preparation would have made Anderson an available witness. Anderson's affidavit is thus irrelevant to Smith's argument and we ignore it.

All of Smith's other family members could be impeached for bias. *See, e.g., United States v. Curtis*, 742 F.2d 1070, 1075 (7th Cir.1984), *cert. denied,* — U.S. ——, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986) (counsel, as a matter of sound trial strategy, could reasonably decide not to call family members as witnesses). Smith was able to advance his "defense of dwelling" defense at trial through his own testimony and that of his mother. The testimony of all the affiants was at best cumulative and added no new facts or theories that would aid Smith's defense. *See United States ex rel. Searcy v. Greer*, 768 F.2d 906, 913 (7th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct.

---

**5.** We are assuming, *arguendo,* that Blumenthal is not to be charged with the sins of his predecessors. Because Smith fails to demonstrate prejudice, we need not decide whether a defendant who brings "new" counsel into the case has a right to begin investigation and discovery all over again.

412, 88 L.Ed.2d 363 (1985) (since defendant's alibi was corroborated by his mother, no error to deny a continuance to allow time to bring in other witnesses to provide cumulative evidence). We do not embrace Smith's argument that, despite the strength of the government's case, cumulative testimony by Smith's family members and neighbors would have so bolstered Smith's defense that not calling the witnesses amounted to a violation of the Sixth Amendment.

 Smith's only other argument is that he was prejudiced because his attorney did not have an opportunity to file a timely suppression motion. Even if we were to assume that a timely suppression motion would have been granted, Smith fails to demonstrate prejudice. Smith's confession was, in most significant respects, consistent with the exculpatory defense he advanced at trial. The only significant deviation is that in the confession Smith admitted that he fired the .357 magnum out the front door, and at trial Smith testified that his cousin Anderson fired the gun. Smith conceded, however, both in his confession and at trial, that he fired all the other weapons out his bedroom window. Smith's defense was not that he did not shoot at the police, but rather that the shooting he did was justified. Therefore, excluding the confession would have, at most, strengthened the suggestion that both Anderson and Smith were guilty of attempted murder. Allowing the confession did not undermine Smith's defense.

Smith also admitted selling marijuana in his confession, but claimed at trial he possessed only a small amount of marijuana for personal use. The jury chose to disbelieve Smith's confession and accept his trial statement, acquitting him of selling and convicting him of possession. Because the jury ignored Smith's post-arrest confession and instead convicted him on the lesser charge to which he confessed at trial,

Smith was clearly not prejudiced by the admission of his post-arrest confession.

## III. CONCLUSION

We conclude that Smith has failed to demonstrate any prejudice from his alleged "court-induced" ineffective assistance of counsel claim. It is therefore unnecessary to determine whether the state trial court abused its discretion in denying Smith's motion for a continuance. The district court's decision to dismiss Smith's petition for writ of habeas corpus is

AFFIRMED.[6]

---

**6.** The court appreciates the services of Susan G. Feibus as appointed counsel for petitioner Le-

roy Smith, Jr.