Melvin SMITH, Petitioner,

v.

Jack R. DUCKWORTH and Indiana Attorney General, Respondents.

No. S 86–697.

United States District Court, N.D. Indiana, South Bend Division.

May 4, 1987.

Melvin Smith, pro se.

---

David A. Nowak, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

The petitioner, Melvin Smith, files this petition *pro se* seeking relief under 28 U.S.C. § 2254. Said petition was filed on December 19, 1986. The petitioner was convicted on May 25, 1966, of the crime of second degree murder in the Lake County Criminal Court and that conviction was affirmed in *Smith v. State*, 252 Ind. 425, 249 N.E.2d 493 (1969), in a unanimous opinion by the Supreme Court except that Judge Jackson concurred in result without opinion. The state court record has been filed here pursuant to the mandates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and examined. The mandates of *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982), have been followed. As indicated in the reported decision of the Supreme Court by then Judge Givan, the issue there raised was the sufficiency of evidence to support the conviction of murder for which the sentence was life imprisonment.

Justice Stewart speaking for the Supreme Court of the United States in *Jackson v. Virginia*, 443 U.S. 307, 323, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979), stated:

A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. See 28 U.S.C. § 2254(b), (d). What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the believe that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

In this context the factual findings of the highest court in the State of Indiana are entitled to a presumption of correctness under 28 U.S.C. § 2254(d).

However, here the petitioner is attempting to raise two issues: one relates to the voluntariness or the absence of an attorney when a statement was made, and the second relates to a claim of ineffective assistance of counsel under the Sixth Amendment of the Constitution of the United States.

The presumptions under 28 U.S.C. § 2254 are different as to these issues. As to the voluntariness of a confession, the case of *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), indicates that the question of a confession's voluntariness is "a legal inquiry requiring plenary federal review." The teaching seems to be that the full-blown presumption of § 2254(d) may not apply to confessions. *See United States ex rel. Cole v. Lane*, 793 F.2d 155 (7th Cir.1986).

With regard to § 2254(d) as to Sixth Amendment effective assistance of counsel issue, there appears to be some verbal variation in the approaches taken by various judges and panels of this Court of Appeals.[1]

---

1. Reading a recent article, *Whither (Or Wither) Habeas Corpus?: Observations of the Supreme Court's 1985 Term* by Professor Ira P. Robbins at 111 F.R.D. 265–301, causes this court to look with great precision at the implications of 28 U.S.C. § 2254(d). In its present form it states:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reli-

Following the court's mandates in *Miller v. Fenton*, it is necessary to examine the factual record in this case in some considerable detail. The Supreme Court of Indiana, speaking through Judge Givan, elaborately set forth the salient and necessary facts which are certainly consistent with those found in the record. On August 3, 1965, at approximately 11:00 o'clock P.M., this petitioner fired two shots from a pistol at John "Slow Kid" Palmer. Palmer died as the result of the wounds he then received. Petitioner fled the scene after firing the shots and had conversations with various acquaintances and was told that he should talk to the police. Shortly before 8:00 o'clock A.M. on August 4, 1965, the petitioner contacted Paul Stubblefield, a con-

able and adequate written indicia, shall be presumed to be correct unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly support by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, doe not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

One must look very carefully at the subject matter of the state court findings as well as the manner in which they are recorded. Even then there appear to be variations of wording. For example, in *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), held that the voluntariness of a confession is a mixed fact/law question that is not entitled to the presumption of correctness.

The question remains open as to whether the state court determination on the question of waiver of a constitutional right is a question of fact subject to the presumption under § 2254(d). *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), held that such was a mixed question of law/fact. In *Miller v. Fenton*, 106 S.Ct. 449 n. 3, the majority expressly reserved stated question. This might raise the question as to whether a judicial wake is being prepared for that part of *Brewer v. Williams*. As indicated by Professor Robbins, there is a circuit split on the application of § 2254(d) to such waivers. *See* 111 F.R.D. 274 n. 87.

In this circuit there appears to at least be some semantical disparity. In *United States ex rel Smith v. Lane*, 794 F.2d 287, 289 n. 3 (7th Cir.1986), in a Sixth Amendment context it was stated that state findings on that subject were entitled to "deference" but did not apply the presumption of correctness standard. In an earlier case in a Sixth Amendment context, it was suggested that the findings of the Wisconsin Supreme Court "come to us with a presumption of correctness," citing *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). *Walberg v. Israel*, 766 F.2d 1071 (7th Cir.1985). In another case from Wisconsin involving a Sixth Amendment issue it was stated that the Wisconsin findings "were presumed correct unless not fairly supported by the record." *Sharlow v. Israel*, 767 F.2d 373, 375 (7th Cir.1985). Also, compare *United States ex rel. Smith v. Fairman*, 769 F.2d 386, 395 (7th Cir.1985), and *United States ex rel. Searcy v. Greer*, 768 F.2d 906, 911 (7th Cir.1985). However, when considering the issue of the voluntariness of a confession, this circuit has followed *Miller v. Fenton* in determining that such a confession is not entitled to a presumption of correctness. It is a matter for independent federal determination. *See Burns v. Clusen*, 798 F.2d 931 (7th Cir.1986); *Barrera v. Young*, 794 F.2d 1264 (7th Cir.1986); *Woods v. Clusen*, 794 F.2d 293 (7th Cir.1986); and *United States ex rel. Cole v. Lane*, 793 F.2d 155 (7th Cir.1986).

In this case the findings of the Supreme Court of Indiana are correct under any of the above authorities and no reason here exists to undermine them.

stable for the justice of the peace and petitioner later testified that "I gave myself up to Paul Stubblefield." Constable Stubblefield took the petitioner to the home of Gary Police Officer Clinton Savage where the petitioner informed Stubblefield and Savage of the events of the previous night. He was then transported to the Gary Police station by Savage where he stayed until about 10:00 o'clock A.M. when detectives from the East Chicago Police Department picked him up and transported him to East Chicago. At approximately 11:00 A.M., petitioner arrived at the East Chicago Police State and was questioned by Officers Ford and Jackson. When Office Ford first met the petitioner he advised the petitioner that he had the right to counsel. Petitioner responded that all he wanted to do was to get his conscience clear and to get this thing over with. Petitioner admitted that he had used a gun to shoot "Slow Kid" and the officers and petitioner went to the residence of a Mr. Jones in Gary to get the gun. Upon their return to the East Chicago Police Station, Officer Jackson again questioned petitioner and obtained a written statement from the petitioner this time. Officer Jackson stated that he advised the petitioner of his rights to an attorney and the petitioner stated that he wanted to get his conscience clear. A written statement was obtained at about 2:30 o'clock in the afternoon that day and such written statement was admitted and is found at page 331 of the transcript.

At about 7:00 o'clock P.M. on August 4, 1965, petitioner was again questioned by Officer Ford and was advised of his rights prior to this questioning. The petitioner then made a second written statement. He signed this statement after being advised of his right to counsel and said that he was going to clear his conscience and get the record straight. The second statement is in the record at page 332. All of the police officers have indicated the advice of the right to counsel prior to any questioning. The evidence in the record disclosed that this petitioner repeatedly refused assistance and stated that he wanted to clear his conscience. Both Officers Ford and Jackson testified to these facts. The petitioner later testified that he was never advised of his rights and that the police refused his request for an attorney and to make a telephone call. The petitioner was represented by an able and experienced criminal defense lawyer. Prior to trial, the petitioner's counsel filed a motion to suppress the statement obtained from the petitioner. A hearing was held thereon and the state trial judge overruled the motion to suppress and admitted both of the aforesaid written statements into evidence.

■ Petitioner here alleges that he asked for an attorney which was denied. At most, this is a conflict in the evidence regarding the request for an attorney between at least two police officers and the petitioner himself. The trier of fact in this case was an experienced state court judge who had to make the necessary credibility choice. He was in a far better position than this court to make such a choice and that choice should not be disturbed except on the clearest showing of a constitutional violation. *See Wade v. Duckworth,* 626 F.Supp. 1048, 1055 (N.D.Ind.1986). Judge Givan spoke on this very issue for the Supreme Court of Indiana:

> Because of the severity of this case and because of the nature of the questions raised by the appellant in his brief, we have carefully examined not only the controlling cases in Indiana but also the recent cases decided by the Supreme Court of the United States, including *Escobedo v. Illinois* (1964), 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, in an effort to determine whether or not the police authorities and the Trial Court afforded every constitutional protection outlined in these recent decisions. From the record of this case we hold that the appellant received full protection of his constitutional rights as guaranteed by both the Constitution of Indiana and the Constitution of the United States. It is noted that the trial in this case was held on May 23, 24, and 25 of 1966. The Supreme Court of the United States held in *Johnson v. New Jersey* (1966), 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, that the principles of law set forth in

*Miranda v. Arizona, supra,* [384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)], are available only to persons whose trial had not begun as of June 13, 1966. However, we note that the Supreme Court of the United States in its opinion in *Miranda,* beginning at page 447, 86 S.Ct. at p. 1629, made the following statement recognizing proper police functions:

Our decision is not intended to hamper the traditional function of police officers in investigating crime. *See Escobedo v. State of Illinois,* 378 U.S. 478, 492, 84 S.Ct. 1758, 1765, [12 L.Ed.2d 977, 986 (1964)]. When an individual is in custody on probable cause, the police may, of course, seek out evidence in the field to be used at trial against him. Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information he may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present. In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

From the above language it is clear that the Supreme Court of the United States in rendering its recent decisions has not intended to interfere with proper police questioning of a person who has voluntarily entered the police station and who has, as in the case at bar, been fully advised of his constitutional rights by the officers present, even before he is questioned concerning his voluntary statements. Police work in this case was not only proper but exemplary of the standards set out in the *Miranda* and other related decisions.

Fulfilling this court's obligation under *Miller v. Fenton,* this court determines, on the basis of the record, that this petitioner was fully advised of his rights and made a voluntary statement. *See also United States ex rel. Cole v. Lane,* 654 F.Supp. 74 (N.D.Ill.1987). There was no constitutional error in the admission of these two written statements and the court specifically finds that such confessions were free and voluntary.

As indicated above, there is some variation in the approaches taken under § 2254(d) as to the effect of state court determination on the effective assistance of counsel under the Sixth Amendment of the Constitution of the United States as defined in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That standard is stated as follows:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in

the adversary process that renders the result unreliable.

*See also United States ex rel. Weismiller v. Lane,* 815 F.2d 1106 (7th Cir.1987); *United States ex rel. Shiflet v. Lane,* 815 F.2d 457 (7th Cir.1987); and *United States ex rel. Link v. Lane,* 811 F.2d 1166 (7th Cir.1987).

 The focus of this claim of ineffective assistance of counsel is on the post-trial actions or lack thereof and does not focus on the conduct of attorney Work during the course of this trial. After his conviction, the petitioner filed a *pro se* motion for a new trial, motion for extension of time, motion for leave to amend, a pauper petition for the appointment of attorney, and expenses for appeal and transcripts. The petitioner alleges that attorney Work abandoned him without filing a timely motion for a new trial or to take other steps to perfect an appeal. The state trial court took up and denied all of the plaintiff's motions. The petitioner continued *pro se* to attempt to perfect his appeal and have counsel appointed. Eventually, petitioner obtained a writ of mandate from the Indiana Supreme Court which directed the Lake Criminal Court to appoint an attorney and to grant his pauperis petition. The state trial court then appointed Nick Thiros, a very experienced and highly competent criminal defense lawyer, to represent the petitioner. Mr. Thiros promptly filed an assignment of errors and perfected an appeal which, as indicated, was heard on its merits. Certainly, the post-trial conduct of attorney Work is less than ideal. *See also Ross v. Heyne, et al.,* 638 F.2d 979 (7th Cir.1980), affirming in part and reversing in part this court's decision at 483 F.Supp. 798 (N.D.Ind.1980). The Supreme Court of Indiana was certainly not enamored with this lack of professional conduct and found that the petitioner was deprived of representation. Attorney Work had simply failed to effect an appeal or to lay the necessary groundwork therefor. Thus, the first element of the *Strickland* analysis has been fulfilled. However, the plaintiff has failed to show that the aforesaid deficient performance resulted in any actual prejudice of his defense. See *Key v. United States,* 806 F.2d 133 (7th Cir.1986);

*United States ex rel. Smith v. Lane,* 794 F.2d 287 (7th Cir.1986); and *United States v. Rodgers,* 755 F.2d 533 (7th Cir.1985). The standard in *Strickland* is clear. Any error of counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. This petitioner must therefore show that there is a reasonable possibility but for attorney Work's unprofessional conduct, the result of the proceeding would have been different. No such showing has been made.

Once a lawyer was appointed to represent the petitioner and an appeal was perfected and heard on its merits by the Supreme Court of Indiana and indeed, that court praised attorney Thiros by stating that the issues were "very ably briefed by the appointed appellate counsel." Thus, under the second prong of the *Strickland* test, there is simply no prejudice shown as resulting from any deficient performance of attorney Work.

This decision is made as a result of independent examination of the record and this court does not rest its decision solely on any presumption or inference in 28 U.S.C. § 2254(d).

For all of the above and foregoing reasons, there is no bases for relief under 28 U.S.C. § 2254, and the same is now DENIED.