**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Joseph Y. SATO, Defendant-Appellant.**

**No. 86–2197.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1986.

Decided March 16, 1987.

Rehearing and Rehearing En Banc
Denied May 15, 1987.

Robert L. Collins, Carol Stream, Ill., for defendant-appellant.

Sharon E. Jones, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before COFFEY and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.[*]

GRANT, Senior District Judge.

Joseph Y. Sato appeals from his conviction and sentence on two counts of a three-count indictment charging him with willful failure to file federal income tax returns. After the jury returned its verdict and the district court denied Sato's motion for a new trial, the court sentenced Sato to three years of probation with the condition that Sato pay back taxes in the amount of $7,172.96, plus interest and penalties, and file tax returns during the period of probation. The court also imposed a $20,000 fine to be paid during the period of probation and, thereafter, denied Sato's motion for reduction of sentence. Sato now appeals.

I

For fifteen years prior to the 1982 tax year, Sato dutifully filed federal income tax returns and usually without incident. In the years 1978 through 1981, Sato's son, Mark, prepared Sato's tax returns, which included deductions for the "Sato Family Trust." These deductions became the focus of IRS audits. The trust deductions were disallowed and the IRS notified Sato of additional taxes due. Ultimately, the United States Tax Court dismissed two petitions Sato filed to challenge disallowance of the 1978, 1979 and 1980 trust deductions. The decisions of the Tax Court are not an issue here.

Sato failed to file tax returns for the 1982, 1983 and 1984 tax years. At trial on criminal charges of willful failure to file tax returns, 26 U.S.C. § 7203, Sato offered as a principal theory of defense that he relied on his son's advice with respect to tax matters and, therefore, the government could not prove Sato "willfully" failed to file. Specifically, Sato contends his son made the decision not to file, and an unpublished Order of this Court was pivotal in "reinforcing his belief in his son." Appellant Br. at 8. Mark testified at trial that he represented his father on all tax matters.

II

Sato argues it was reversible error for the district court to allow only a stipulation to a document, rather than allowing it into evidence. The document, an unpublished Order of this Court (*Sato v. Henry Yon*, 725 F.2d 688 (1983), concerned the ability of Sato's son to represent his father during the earlier IRS audit. According to Sato, the Order would offer to the jury a persuasive explanation for his reliance on the judgment of his son on tax matters. Because Sato's defense in this criminal tax case was premised upon the good faith reliance on the advice of his son, he argues the court was "without authority" to deny admission of a document providing the best proof that he did not "willfully" fail to file a return. We believe Sato has failed to show the district court abused its discretion in refusing to admit the document. We will not reverse an evidentiary ruling of the district court unless we are convinced the court abused its discretion. *United States v. Harris*, 761 F.2d 394, 398 (7th Cir.1985).

Relevance is doubtful under Fed.R.Evid. 401. To make a case for relevance, Sato must argue that the unpublished Order would help to explain to the jury why his reliance on his son justified his failure to file tax returns. The Order would be relevant if its subject matter touches upon something affecting Sato's state of mind,

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

or specifically, operates to negate a finding of willfulness.

In this tax case setting, willfulness is defined as "a voluntary, intentional violation of a known legal duty." *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976). *See United States v. Verkuilen*, 690 F.2d 648, 655 n. 8 (7th Cir.1982). Although the government need not show *mens rea,* or that Sato had an "evil-meaning mind," *Morissette v. United States*, 342 U.S. 246, 251, 72 S.Ct. 240, 244, 96 L.Ed. 288 (1952), a finding of willful conduct "would necessarily negate any possibility of 'good faith' in failing to file." *United States v. Moore,* 627 F.2d 830, 833 n. 1 (7th Cir.1980). Typically, defendants have argued that a particular instruction to the jury on the meaning of "willful" conduct leaves no room for making out a good faith defense. *E.g., United States v. Verkuilen,* 690 F.2d 648 (7th Cir.1982). Ours is a different, but similar, problem. Sato contends the unpublished Order is legally relevant to his good faith defense for failing to file tax returns. He insists suppression of the Order denies his defense.

This Court has recognized that only an inadvertent failure to file or a bona fide misunderstanding of the duty to make a return constitutes justifiable excuse under the meaning of "willful" in 26 U.S.C. § 7203. *United States v. Matosky*, 421 F.2d 410, 413 (7th Cir.), *cert. denied*, 398 U.S. 904, 90 S.Ct. 1691, 26 L.Ed.2d 62 (1970). Sato has made no claim that his was an inadvertent failure to file. A bona fide misunderstanding of the duty to file, on the other hand, might be framed as a "mistake of law" defense which, according to this Court, succeeds or fails on the standard of objective reasonableness. *United States v. Foster,* 789 F.2d 457, 461 (7th Cir.1986); *United States v. Moore,* 627 F.2d 830, 833 (7th Cir.1980). We conclude it would be almost impossible for a taxpayer to reasonably believe that the contents of the Order suggest Sato is excused from filing an income tax return. The Order simply states the son may represent Sato during the earlier IRS audit; in no way

does the Order make the existence of good faith more or less probable. The Order does not and could not, reasonably, create any bona fide misunderstanding of the duty to file tax returns. Because the Order was not relevant to Sato's defense, it was within the district court's discretion to refuse to admit the document in evidence. Moreover, we find particularly comforting the decision of the district court to place no limitations on Sato's testimony concerning the contents of the Order or his reliance on his son.

## III

Sato contends the district court abused its discretion in imposing the $20,000 fine. He argues that once his Rule 35 motion for reduction of sentence was made and denied, the court was required to issue a full statement of reasons. Sato insists the court should have considered a broader range of sentencing factors, something more than his lack of repentance and the presentence investigation report. Specifically, he suggests the district court should have considered his advanced age of 69 years, ill health—including hearing, walking, and prostate problems—his forced internment during World War II as a Japanese-American, as well as the "disparity" between the sentence he received and that received by a similarly situated defendant in another case. As a "model citizen," Sato suggests he already has paid any debt that society might demand of him.

The sentencing judge enjoys wide discretion in sentencing, *United States v. Marquardt*, 786 F.2d 771, 781 (7th Cir. 1986); *United States v. McCoy,* 770 F.2d 647, 648 (7th Cir.1985), and the sentence imposed by a district court will not be upset unless it violates applicable statutory limits or the district judge has abused or failed to exercise sentencing discretion. *United States v. Jones,* 808 F.2d 561, 570 (7th Cir.1986) (citing *United States v. Allen,* 797 F.2d 1395, 1402 (7th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986); *United States v. Mitchell,* 788 F.2d 1232, 1237 (7th Cir. 1986)). Sato's sentence of 3 years proba-

tion and a $20,000 fine falls well within the maximum penalty under law for conviction on two counts, a combined two years of imprisonment and a $50,000 fine. 26 U.S.C. § 7203. As a sentence imposed within the statutory limits, Sato's sentence is reviewed on appeal only for evidence of a failure to exercise discretion, or for evidence of a reliance on improper or unreliable information. *United States v. Main*, 598 F.2d 1086, 1094 (7th Cir.), *cert. denied*, 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 311 (1979).

Nothing on the record suggests the district court abused or failed to exercise its discretion. We have no indication the sentencing judge considered improper or unreliable factors. When the judge states he read the presentence investigation report, we should presume he considered the matters raised therein. The report was accurate, and it contained proper information, with the minor exception that the parole information was based on the offense of tax evasion rather than the failure to file. The judge stated he would not rely on this information, and we do not consider it the type of "factual inaccuracy" that must be remedied by compliance with Fed.R.Crim.Pro. 32(c)(3)(D). *See, e.g., United States v. Reynolds*, 801 F.2d 952, 957 (7th Cir.1986). Moreover, there can be no doubt the sentencing judge may consider the serious nature of the offense, the potential for deterrence through punishment, and whether the defendant is contrite. Because the judge's discretion in this area is necessarily broad, we are not in a position to question the relative emphasis a sentencing judge places on one factor over another. We are convinced the district judge considered a broad range of factors before sentencing Sato. Much to Sato's favor, in fact, the court noted Sato's lack of criminal experience as well as his wartime internment. Incarceration, therefore, was considered too severe. In short, the sentencing judge read the presentence investigation report and imposed sentence, detailing some, but not exhausting, the factors he considered. Without any showing that these factors were unreliable, we are content to hold that the district court properly exercised its discretion in imposing sentence.

We acknowledge that the Sentencing Reform Act of 1984 attempts to promote uniformity in sentencing by requiring judges to defer to the guidelines established by the U.S. Sentencing Commission. The 1984 Act represents a sudden curtailment of judicial discretion; it requires narrower sentencing ranges and authorizes appeals of sentences imposed outside the ranges. Nonetheless, the 1984 Act was not yet effective at the time of Sato's sentencing. We note that, although we are satisfied the district judge gave Sato a full explanation of reasons for his sentence, the new law may require more of a statement from the sentencing judge. 18 U.S.C. § 3553(c). Sentencing judges may also have to give fuller attention to the alleged "disparity" between sentences of similarly situated defendants. 18 U.S.C. § 3553(a)(6). For now, however, Sato must advance such arguments in general terms of abuse of discretion, and we are convinced it was within the district judge's discretion to find that the facts of the case Sato refers us to, *United States v. Dubrovich*, 86 CR 156 (N.D.Ill.1986) (five years probation, no fine), are different enough to warrant a different sentence for Sato.

### IV

As a final contention, Sato argues that the fine imposed by the district court contravenes the eighth amendment of the United States Constitution. ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.) He claims that despite the existence of the upper limit of the statutory fine, the fine imposed is "excessive" in the context of his ability to pay. We might envision the extremely rare case wherein the fine imposed might be excessive and unconstitutional solely in terms of the defendant's resources. But this is certainly not the case. In fact, the record is silent on the question of Sato's ability to pay the fine. Rather than trigger a question of constitutional dimension, evidence of Sato's ability

to pay would be a matter for consideration within the discretion of the sentencing judge. The new sentencing law would confirm such an approach to imposing a sentence of fine. 18 U.S.C. § 3572(a)(1).

In constitutional terms, Sato contends the punishment is grossly disproportionate to the severity of the crime. The government has referred us to a number of cases upholding, against arguments of disproportionality, sentences of fine and imprisonment for failure to file income taxes. *United States v. Shaffer*, 291 F.2d 689, 694 (7th Cir.), *cert. denied*, 368 U.S. 915, 82 S.Ct. 192, 7 L.Ed.2d 130 (1961) ($5,000 fine, one year incarceration); *Martin v. United States*, 317 F.2d 753, 755 (9th Cir.1963) ($1,000 fine, one month incarceration); *United States v. Overton*, 359 F.2d 28, 29 (4th Cir.1966) ($5,000 fine, 3 months incarceration); *United States v. Campbell*, 619 F.2d 765, 767 (8th Cir.1980) ($1,500 fine, six months incarceration). Not only are these cases quite different from the present case in that Sato's sentence does not include incarceration (and thus, his argument is probably even weaker, considering he has suffered no deprivation of liberty), but Sato has not offered any case which supports his constitutional argument or which counters the cases offered by the government. He cites *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), but that case involved a barbarous, antiquated form of incarceration and is immediately distinguishable.

Sato's case is further weakened by the state of the law on proportionate punishment. All the Supreme Court Justices would agree that proportionality is a proper subject of inquiry in capital cases. The Court has acknowledged that the penalty of death is different *in kind*. However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980). This lack of success stems in large part from the substantial deference appellate courts properly accord to legislatures and sentencing courts in their efforts to mete out just punishment, whether light or heavy, discretionary or determinate.

A triad of cases fairly represents the Supreme Court's recent attempt to apply the eighth amendment to noncapital sentences. *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), held that a life prison term under the Texas recidivist statute was not a grossly disproportionate sentence for a third felony conviction, the last being for the crime of obtaining $120.75 by false pretenses. *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), held that a forty-year prison term and a $20,000 fine was not an unconstitutional sentence for a conviction on charges of possession with intent to distribute a small amount of marijuana. In *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), however, the Court found life imprisonment without parole to be an unconstitutionally disproportionate sentence, although the sentence was triggered under the South Dakota recidivist statute by a seventh nonviolent felony, the last being the utterance of a "no account" check. These cases sharply divided the Court on the fundamental question of the role of appellate courts in reviewing prison sentences for proportionality.

Despite the disagreement among the Justices, the cases appear to establish a few certain principles. Most fundamentally, although substantial deference is due the legislatures and sentencing courts, "[n]o penalty is *per se* constitutional." *Solem*, 463 U.S. at 290, 103 S.Ct. at 3009. However, the concern of an appellate court should be only the occasional "manifestly unjust" sentence, *Hutto*, 454 U.S. at 377, 102 S.Ct. at 707 (Powell, J., concurring), or in the more restrictive words of then Chief Justice Burger, appellate review for proportionality is proper "only in extraordinary cases, *Weems* being one example and the line of capital cases another." *Solem*, 463 U.S. at 313, 103 S.Ct. at 3022 (Burger, C.J., dissenting). In *Weems*, the Court held unconstitutional a fifteen year sentence of *cadena temporal* (imprisonment with hard labor and permanent loss of civil liberties), finding the punishment to be dis-

proportionate to the crime of falsifying a public document. In the capital cases, the Court has applied the principle of proportionality to hold capital punishment excessive in certain circumstances. *E.g., Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977).

This case does not present the issue of whether *Weems* is a subset of case law consisting only of itself (because it was unknown to Anglo-Saxon law and is a "bizarre physically cruel punishment," *Solem,* 463 U.S. at 307, 103 S.Ct. at 3019 (Burger, C.J., dissenting)), or whether *Weems* is just one of a larger subset of cases involving "manifestly unjust" sentences. Furthermore, this Court is not required, in the present case, to refer to the "objective factors" recommended by the Court in *Solem* for measuring the proportionality of a sentence (consider (i) nature of offense and harshness of penalty, (ii) sentence imposed for same crime in other jurisdictions, and (iii) sentence imposed on other criminals in same jurisdiction, 463 U.S. at 291–2, 103 S.Ct. at 3010–11). Apart from the capital cases, the crux of the proportionality debate among the Justices involves the propriety of reviewing sentences of long-term incarceration. Although the eighth amendment proscribes "excessive" fines, and the Court might apply proportionality analysis to fine sentences, *Solem,* 463 U.S. at 289, 103 S.Ct. at 3009, Sato can cite to no authority for his claim that he is the victim of a manifestly unjust sentence. Simply put, even the most thorough exegesis of the proportionality cases could not manufacture an argument for Sato. Because we are unaware of any precedent supporting the position advanced by Sato, we conclude his proportionality argument must fail when the sentence of fine imposed by the district judge falls well within statutory parameters.

Even if we were inclined to make imperfect comparisons with "other jurisdictions," we note that under Illinois law the willful failure to file state income taxes is punishable as a Class 4 felony, Ill.Ann.Stat. ch. 120 ¶ 13–1301, and subject to a $10,000 fine for each offense. Ill.Ann.Stat. ch. 38 ¶ 1005–9–1. We believe the penalties authorized by state and federal law reflect the serious breach of public duty legislatures attribute to the willful failure to file taxes.

For the reasons set forth above, we affirm the district court's judgment of conviction and sentence.