**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rajan GEORGE, Defendant–Appellant.**

**No. 89–1650.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 21, 1989.
Decided Nov. 17, 1989.

Nathan A. Fishbach, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., R. Jeffrey Wagner, for plaintiff-appellee.

Robert G. LeBell, Milwaukee, Wis., for defendant-appellant.

Before WOOD, Jr., EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Rajan George pleaded guilty to two counts of mail fraud in violation of 18 U.S.C. § 1341. The district court sentenced Mr. George to five years imprisonment on each count, to be served consecutively, and ordered him to pay restitution. Mr. George challenges the length and consecutive nature of the sentence. We now affirm the sentence imposed by the district court.

## I.

### Background

#### A. *Facts*

Rajan George was Chief Executive Officer of The Rajan Group, a group of several investment companies, from August, 1982 to May, 1987. In that capacity, he conceived and carried out a plan to defraud investors and obtain money by false pretenses, using the United States mails to accomplish his purpose. Mr. George represented to the public that investments made in The Rajan Group would yield a substantial return within a relatively short period. He used the mail to send promotional material to actual and potential investors, receive funds from investors, and provide investors with forms indicating the amount of their interest income. Between April, 1984 and May, 1987, Mr. George received $3,683,030.80 from 71 investors located in 15 states and Saudi Arabia. He restored $727,770.60 to the investors[1] and used the remainder for corporate purposes. Specifically, Mr. George used $2,955,260.20 to pay corporate expenses, fund an advertising campaign to promote the companies, and pay some investors a partial return on their investments.

#### B. *The District Court*

##### 1. Arraignment and plea

On January 3, 1989, Mr. George was charged with and pleaded guilty to two counts of mail fraud. The specific mailing charged in count one occurred in November, 1986, when Pattiyil Lukose sent Mr. George a check through the United States mail in the amount of $25,000.00.[2] The specific mailing charged in count two occurred in September, 1986, when George Phillip sent the defendant a letter and check in the amount of $5,000.00 through the United States mail.[3] Mr. George admitted his guilt and conceded that the facts

---

1. According to Mr. George, a total of $4,977,642.00 was received from 113 investors. He claims that $2,237,159.00 was returned to investors, for a net loss of $2,740,483.00. Because Mr. George does not contest the restitution order, we accept the government's figures.

2. Mr. Lukose met Mr. George in the summer of 1986. The defendant informed Mr. Lukose that The Rajan Group was an investment company offering high interest rates through the export and import of goods. Mr. Lukose was interested in the promised 30–40% return; between November, 1986 and April, 1987, he invested a total of $35,000.00 with Mr. George, of which

only $6,158.00 was returned in the form of interest.

3. In September, 1986, Mr. George sent Mr. Phillip a letter offering a short-term marketing plan; a $5,000.00 investment for ninety days would pay $430.00 per month. He invested $5,000.00 and received interest of $430.00 per month for the last three months of 1986. He was persuaded to "roll over" the principal and received two additional interest payments of $430.00 each in January and February, 1987. In February, Mr. Phillip invested another $5,000.00, but received no further return on his funds. Of his

presented by the government were substantially correct. He reminded the court, however, that he derived no direct benefit from his activities.

In return for his guilty plea, the government charged Mr. George with only two of the potential seventy-one fraud counts, and agreed not to seek federal criminal tax charges. The two mail fraud charges carried a maximum period of imprisonment of ten years. Mr. George acknowledged in his plea that he understood he could be sentenced to the maximum term, and that the government would be free to recommend any sentence it deemed appropriate.

### 2. Sentencing

Prior to sentencing, the government sent questionnaires to the victims of Mr. George's scheme. The questionnaires inquired about the impact of Mr. George's activities on their lives. Forty-two investors responded; almost unanimously, the victims requested that he be given a harsh sentence. The government noted at sentencing that most of the victims were not sophisticated businesspersons, but invested in The Rajan Group based on their relationship with and trust in Mr. George. The government then asked that the court consider the maximum sentence of ten years.

Defense counsel argued that the basis of Mr. George's business was legitimate, although it was illegally funded. In mitigation of the seriousness of the offense, counsel noted that Mr. George cooperated fully with the government. He admitted taking more money than the government investigation revealed and provided a full accounting of funds. Counsel also claimed that most investors were not contacted directly, but wrote to Mr. George offering investment funds. In his personal statement to the court, Mr. George elaborated on what

he considered to be mitigating factors in the case. He submitted that, though the means of raising funds to run his business were not correct, his goals were commendable. "But now I have learned the hard way that how noble the cause may be means do not justify the ends." R. 17 at 24. He pointed out that he had a young family who had suffered and would continue to suffer, and asked for leniency in order to put his family's life back together and rejoin the community in a positive, productive way.

Mr. George's fraudulent activities took place prior to November 1, 1987, the effective date of the Federal Sentencing Guidelines. The probation officer nevertheless noted in the presentence report that Mr. George would receive a prison term of between 15 and 21 months if the sentencing guidelines applied.[4] The district court recognized the guidelines did not apply, but acknowledged the defendant's claim that they would call for a sentence of 15–21 months. The court found such a sentence "far, far too low, just simply not, not even remotely related to the serious fraud that was committed in this case." R. 17 at 28–29. The court commented further on the staggering amount of money involved and stated that no sentence short of the ten year maximum would be appropriate.

On March 13, 1989, Mr. George was sentenced to five years imprisonment on each count, to be served consecutively. He also was ordered to make restitution in the amount of $2,955,260.20.

### II.

### Analysis

#### A. *Abuse of Discretion*

 Mr. George first argues that the district court abused its discretion in sen-

---

total investment of $10,000, Mr. Phillip received only $1,720.00 as a return.

**4.** The relevant guideline, § 2F1.1. *Fraud and Deceit,* applies to offenses committed in violation of 18 U.S.C. § 1341. That offense carries a base level of 6, § 2F1.1(a), which increases by 10 levels when there is a loss of $2,000,001–$5,-000,000, § 2F1.1(b)(1)(K). The Probation Department reduced the total offense level from 16 to 14, finding appropriate the two-level reduction under § 3E1.1(a) for acceptance of respon-

sibility. Combining defendant's Criminal History Category of I with his offense level of 14 would have placed him in the 15–21 months range. *See* Federal Sentencing Guidelines, ch. 5 Part A, Sentencing Table.

Defense counsel admitted at sentencing that the guidelines did not apply, but argued that a 15–21 month sentence was appropriate to serve the interests of investors and Mr. George's rehabilitative needs.

tencing him to the maximum period of ten years. In this pre-guidelines case, we apply the principles traditionally applied in the review of sentences. Federal district courts have wide discretion in determining what sentence to impose, *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), and a sentencing judge properly may decide what weight to give the factors in each case. *United States v. Marquardt*, 786 F.2d 771, 781 (7th Cir.1986). Appellate review of sentencing decisions is therefore extremely narrow. *United States v. Nowicki*, 870 F.2d 405, 406 (7th Cir.1989). An appellate court will not vacate a sentence unless it exceeds statutory limits or the " ' "sentencing judge relied upon improper considerations or unreliable information in exercising his discretion or failed to exercise any discretion at all in imposing the sentence." ' *United States v. Ford*, 840 F.2d 460, 466 (7th Cir.1988) (quoting *United States v. Harris*, 761 F.2d 394, 402–03 (7th Cir. 1985))." *Id.; United States v. Vega*, 860 F.2d 779, 800 (7th Cir.1988). The sentence in this case is the maximum permitted by law, but does not exceed statutory limits. Moreover, Mr. George does not allege that the trial court relied on misinformation. Rather, he contends that the trial court did not consider the mitigating evidence and therefore abused its discretion.

This is not a case where the sentencing judge "failed to use any discretion at all." A review of the record makes it quite plain that the district court considered all the evidence. The court simply concluded that the enormity of defendant's fraud was the dominant factor it had to consider. At sentencing, the district court specifically noted that it had

> spent a good deal of time over this weekend reviewing this case, reading the letters from victims, reviewing and reading Mr. George's statements. This is truly a

staggering, mind boggling case in terms of the dollars involved and the amounts of money lost, suffered by individual investors.

R. 17 at 27. Mr. George claims it was error for the court to give such weight to the "sheer magnitude of the fraud amount and number of and impact upon the alleged victims." Appellant's Br. at 14. This same argument was rejected in *United States v. Neyens*, 831 F.2d 156, 159 (7th Cir.1987), where the defendant claimed the trial court erred in failing to consider mitigating factors. No abuse of discretion was found and the sentence was affirmed because the record demonstrated that "the district judge considered the factors, but did not place a great deal of weight on them in light of what he considered to be the seriousness of [defendant's] offenses and conduct." *Id.* at 160; *see also Marquardt*, 786 F.2d at 781 (sentencing court may decide what weight to give factors in each case).

In sum, the court considered Mr. George's proofs, found the nature of the offense outweighed the mitigating factors, and consequently imposed a 10 year sentence for the nearly $3,000,000 loss caused by Mr. George. His claim is thus without merit.

### B. *Sentencing Guidelines*

Defendant claims the sentencing guidelines should have controlled his sentence.[5] This court already has considered and decided this issue. In *United States v. Stewart*, 865 F.2d 115, 118 (7th Cir.1988), the guidelines were held inapplicable to offenses occurring before November 1, 1987, the effective date of the Sentencing Reform Act. "Congress' clear intent was, in fact, that the [Act] *not* apply retroactively." *Id.* (emphasis in original). Mr. George now maintains the same position *Stewart* and other courts[6] have thoroughly rejected. We are bound by our holding in *Stewart*.

---

**5.** Defendant maintains he would have received a 15–21 month sentence under the guidelines, rather than the 120 months actually imposed. *See supra* note 4 and accompanying text.

**6.** *See United States v. Newman*, 889 F.2d 88, 94 (6th Cir.1989) (guidelines may not be applied retroactively; "[t]he specific provisions of the

Sentencing Reform Act obviate any discussion of its retroactivity"); *United States v. Kendis*, 883 F.2d 209, 211 n. 1 (3d Cir.1989) (court summarily rejected defendant's argument that guidelines should have been applied retroactively); *United States v. Argitakos*, 862 F.2d 423, 424–25 (2nd Cir.1988) (guidelines do not govern where crime and sentence occurred prior to

## C. Constitutional Claims

### 1. Cruel and unusual punishment

Mr. George asserts that his ten year sentence constitutes cruel and unusual punishment in violation of the eighth amendment. The Supreme Court set forth the proper standard of review for eighth amendment claims in *Solem v. Helm,* 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3009–11, 77 L.Ed.2d 637 (1983). Under *Solem,*

> a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* 463 U.S. at 292, 103 S.Ct. at 3010. At this court acknowledged in *United States v. Kimberlin,* 781 F.2d 1247 (7th Cir.1985), *cert. denied,* 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986), under *Solem,* "invalidation of sentences for disproportionality should be rare." *Id.* at 1258.

In this case, the district court found that Mr. George had committed an extremely serious offense, causing nearly $3,000,000 in losses, but had been given "very significant considerations in terms of the charges to which [he] pled guilty." R. 17 at 32. The court accordingly determined that nothing short of the maximum sentence for the two counts charged was appropriate. We cannot say that the district court misjudged the gravity of the offense.

Mr. George's sentence also passes muster when compared with other mail fraud sentences imposed in this jurisdiction and nationally. A review of sentences imposed for section 1341 offenses in this jurisdiction reveals that defendant's sentence is proper under *Solem.* Indeed, a very similar eighth amendment claim has been before this court previously. In *United States v. Serhant,* 740 F.2d 548, 549 (7th Cir.1984), the defendant pleaded guilty to four counts of mail fraud in violation of 18 U.S.C. § 1341. He defrauded several hundred investors of up to $20,000,000 through an investment scheme. *Id.* at 549 n. 1. He was sentenced to three consecutive five year prison terms and argued such treatment constituted cruel and unusual punishment. The court compared the defendant's sentence to other mail fraud sentences imposed nationally and held the sentence did not violate the eighth amendment. *Id.* at 554–55; *see also United States v. Ray,* 828 F.2d 399, 424–25 (7th Cir.1987), *cert. denied,* 485 U.S. 64, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988); *United States v. McManigal,* 708 F.2d 276, 278 (7th Cir.), *vacated on other grounds,* 464 U.S. 979, 104 S.Ct. 419, 78 L.Ed.2d 355 (1983). Similarly, statistics for sentences imposed nationally in section 1341 cases reveal that the two five year terms imposed in this case are within reasonable limits. *See generally United States v. Stull,* 743 F.2d 439, 441, 447–48 n. 10 (6th Cir.1984) (comparing sentences on a national basis); *Serhant,* 740 F.2d at 554–55; Administrative Office of the United States Courts, Statistical Analysis and Reports Division, United States Dist. Courts Sentences Imposed Chart Twenty-four Month Period Ended June 30, 1986 (1986).[7]

Having reviewed the evidence and circumstances of the case, we conclude that the trial court did not violate Mr. George's eighth amendment rights. The sentence of ten years imprisonment does not constitute disproportionate, outrageous, cruel or unusual punishment.

---

effective date); *United States v. Burgess,* 858 F.2d 1512, 1514 (11th Cir.1988) (guidelines do not govern sentencing of pre–1987 crimes); *United States v. Rewald,* 835 F.2d 215, 216 (9th Cir.1987) (no review under Act where offense and sentence occurred before November 1, 1987; statute not given retroactive effect absent clear legislative intent); *United States v. Misenheimer,* 677 F.Supp. 1386, 1387 (N.D.Ind.1988) (same).

7. The Sentences Imposed Chart is a compilation of sentences imposed by the 94 United States district courts during the two-year period ending June 30, 1986. In that time, more than a quarter of the 416 defendants sentenced under 18 U.S.C. § 1341 received prison terms of five years or greater. Sentences Imposed Chart at 177–80.

### 2. Equal protection

This claim need not detain us long. Mr. George maintains that it was unfair not to impose a sentence within the guidelines range in his case. In making this claim, he merely repackages his assertion that the guidelines should be applied retroactively. We have rejected this argument earlier. Mr. George's position not only ignores the fact that the guidelines apply only to crimes committed after November 1, 1987, but fails to consider the very real possibility that a sentence imposed under the guidelines could result in more actual prison time than the two consecutive five year terms imposed. *See United States v. Stewart*, 865 F.2d 115, 117 (7th Cir.1988).

### Conclusion

The trial court did not abuse its discretion in sentencing Mr. George to two consecutive five year terms. Because his crimes were committed before the effective date of the Sentencing Reform Act, the district court properly refused to sentence Mr. George pursuant to the sentencing guidelines. Finally, the sentence is not constitutionally disproportionate and thus does not violate the eighth amendment. Mr. George's sentence is therefore affirmed.

AFFIRMED.