**John S. BERGMANN, Petitioner–Appellant,**

v.

**Gary McCAUGHTRY, Respondent–Appellee.**

No. 94–3842.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1995.

Decided Sept. 13, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 6, 1995.

John S. Bergmann, Mark J. Rogers (argued), Waupun, WI, pro se.

Sally L. Wellman, Asst. Atty. Gen., William Gansner (argued), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for respondent-appellee.

Before MANION and ROVNER, Circuit Judges, and WILL, District Judge.[1]

ROVNER, Circuit Judge.

John Bergmann was convicted of first degree reckless injury with a dangerous weapon, kidnapping while armed with a dangerous weapon, intimidation of a witness, and theft from a person. He appeals from the district court's order denying his petition for a writ of habeas corpus. Because Bergmann's constitutional rights were not impinged during the course of his trial, we affirm the district court's judgment.

## I. BACKGROUND

Bergmann's convictions arise out of the early morning kidnapping and battery of Christine Trawitzki on Monday, October 2, 1989. Prior to that incident, Bergmann and Trawitzki had been involved in an intimate relationship and had lived together intermittently for some time. On the Friday before the attack, Trawitzki and Bergmann decided to end their relationship. Late that night, Bergmann left Trawitzki's Milwaukee home with several hundred dollars belonging to her, and drove six hours to the home of his mother and step-father in Bedford, Indiana. Over the course of the weekend, Trawitzki and Bergmann exchanged several phone calls relating to the money. The last call was made on Sunday evening at 10:35 p.m.

At approximately 4:30 the next morning, as Trawitzki was returning home from a neighbor's house, Bergmann attacked her and forced her into his truck at gunpoint. As Bergmann drove, he severely beat Trawitzki, stopping along the road on two occasions to drag her out of the truck and beat her further. By the time Bergmann dumped Trawitzki in a ditch in Racine approximately one hour later, he had broken her nose, caused serious, long-term injury to her right eye, and inflicted bruises and abrasions extensive enough to cost Trawitzki the use of her right arm for a week.[2] Before abandoning her, Bergmann removed money from Trawitzki's wallet and threatened to kill her if she went to the police. He also made thinly veiled threats that he would harm her children.

After Bergmann drove away, Trawitzki crawled out of the ditch and crossed a field, looking for help. She found a home whose residents took her in and called the police. Trawitzki expressed concern for her children, who were asleep at her Milwaukee home in the care of a babysitter. The Milwaukee police were alerted, and the children were removed safely from the home. Bergmann, in the meantime, drove back to his parent's home in Indiana, where he was later apprehended.

At trial, Bergmann's primary defense strategy was to discredit Trawitzki, the main witness in the state's case. However, before the trial began, Bergmann filed a notice of alibi, as he was required to do under Wisconsin law if he intended to call an alibi witness at trial.[3] In the midst of her opening state-

1. The Honorable Hubert L. Will of the United States District Court for the Northern District of Illinois, sitting by designation.

2. The physician who examined Trawitzki in the emergency room following the attack noted that Trawitzki suffered from bite wounds to both arms, bruises that covered her entire back, a swollen lip, a swollen, tender bruise on the back of her head, a broken nose, bruises and swollen tissue around her right eye and forehead, and bruises on her arms and shoulder. He also noted that she was "shaking" and "terrified."

3. Although the filing of the notice is necessary in order to call alibi witnesses, the defendant is at liberty to change his mind and to withdraw the alibi defense with no adverse effects. *See* Wis. Stat. § 971.23(8)(a).

ment, believing that Bergmann intended to go forward with an alibi defense, the prosecutor briefly mentioned to the jury that Bergmann apparently would be raising an alibi defense. Defense counsel immediately objected and the jury was ushered from the courtroom. Out of the presence of the jury, Bergmann's counsel objected to the reference to the alibi defense because he had not yet decided whether he would put on such a defense. He argued that the prosecutor violated Wisconsin Statutes § 971.23(8)(a), which prevents the prosecution from making reference to a withdrawn alibi defense. The court sustained the objection and took Bergmann's motion for a mistrial under advisement. The trial proceeded without any further reference to an alibi.

During the state's case-in-chief, however, the prosecutor called Betty Scott, Bergmann's mother and one of his designated alibi witnesses, to establish, among other things, Bergmann's opportunity to assault Trawitzki. Because Bergmann was in Indiana immediately before and immediately after the attack, the State sought to show that he had adequate time to travel to Milwaukee to commit the offenses. Significantly, the prosecutor did not question Scott about Bergmann's alibi—that is, his whereabouts during the crime—but rather asked only about his absence from her home in Indiana. Scott testified that her son was not home during the relevant time period.

A jury found Bergmann guilty on all charges, and the court sentenced him to fifteen years in the penitentiary with an additional fifteen year suspended sentence, well below the fifty-five year maximum he faced. During the sentencing hearing, the court considered Bergmann's propensities for violence as evidenced by his lack of remorse for his crimes, his history of carrying guns, and the results of psychological testing. The court also considered the impact of the offenses on the victim, the need to protect the community from a person capable of such violence, the gravity of the offenses, and Bergmann's rehabilitative needs. Against this, the court weighed Bergmann's relatively good record before this crime, including family involvement, military service, and lack of a prior significant criminal record.

After exhausting his appeals in the state courts, Bergmann petitioned the district court for a writ of habeas corpus. Bergmann alleged four separate constitutional violations arising out of his trial and sentencing: (1) that the prosecution's reference to his alibi defense and the questioning of one of his alibi witnesses violated his fifth amendment right to remain silent; (2) that his due process rights were violated because there was insufficient evidence to convict him; (3) that the trial court's use of lack of remorse in setting his sentence violated his fifth amendment right against self-incrimination; and (4) that his trial counsel and counsel for post-conviction motions were ineffective.

The district court believed that the prosecutor's reference to Bergmann's alibi defense in her opening statement violated Bergmann's fifth amendment right to remain silent, but that the error was harmless. The state's use of one of Bergmann's designated alibi witnesses did not violate Bergmann's constitutional rights, the court reasoned, because she was called to prove opportunity, and not to impeach Bergmann's alleged alibi. Furthermore, the district court found the evidence sufficient to sustain Bergmann's convictions on all four counts, meaning that he was not denied due process. The district court found that there was no evidence that the trial court enhanced Bergmann's sentence for exercising his right to remain silent. Rather, the trial court properly considered Bergmann's character and degree of dangerousness in calculating his sentence. Finally, the district court found that Bergmann failed to show that trial counsel's representation fell below an objective standard of reasonableness or that any error committed by his post-conviction counsel prejudiced him in any way.

## II. DISCUSSION

◼ We must first decide whether a single inadvertent prosecutorial reference to an alibi defense that the defendant apparently intended to withdraw violated his fifth amendment right to remain silent. As a predicate to relief based on the right to remain silent,

of course, Bergmann must establish a reference to his silence. *See United States v. Ramos,* 932 F.2d 611, 616 (7th Cir.1991). To determine whether the prosecution referred to Bergmann's silence, "we must determine whether (1) it was the prosecutor's manifest intention to refer to the defendant's silence; or (2) the remark was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's silence." *Id.* (citations and internal quotation marks omitted).

■ If the court or the prosecution has referred to the defendant's silence, we must determine whether they thereby invited the jury to infer guilt from the defendant's decision not to testify. *See Griffin v. California,* 380 U.S. 609, 614, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965); *United States v. Sblendorio,* 830 F.2d 1382, 1391 (7th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988). Thus, the prosecution may not comment on the defendant's failure to call witnesses when the only potential witness was the defendant himself. *See Sblendorio,* 830 F.2d at 1391.

> But unless the prosecutor's comment uses the defendant's privilege as evidence against him, it is not objectionable. A court may even call the jury's attention to the defendant's failure to testify, so long as it does not invite an inference based on the privilege.

*Id.* In the instant case, we also take note of a state statute which precludes the prosecution from commenting on a defendant's withdrawal of an alibi defense, and from calling any designated alibi witness not called by the defendant himself to impeach the defendant's credibility with regard to the alibi notice required by the statute.[4] *See* Wis.Stat. § 971.23(8)(a).

In his notice of alibi, Bergmann named three potential alibi witnesses: his mother, his step-father, and himself. In opening remarks the prosecutor stated, "It is my understanding that the defendant will present a defense that he has an alibi—." Following defense counsel's midsentence objection, the jury was removed, and the court sustained the objection. The court offered to give a curative instruction, but Bergmann declined, apparently preferring not to draw further attention to the matter. Neither the prosecution nor the court referred to the alibi defense again. The jury was told nothing about why it was temporarily removed during the opening statement.

Bergmann argues that promising in the opening statement evidence that never comes is as damaging as pointing out in closing the withdrawal of a defense. The Wisconsin appellate court agreed that a reference to the alibi defense in the opening statement is improper because such a reference tends to create the adverse inference that the statute seeks to prevent. But Bergmann offers no law to support the proposition that even a direct violation of the statute is a violation of a defendant's fifth amendment right to remain silent.

■ We hold that the prosecutor's remark did not violate Bergmann's fifth amendment right to remain silent. The district court seems to have assumed that the remark was a reference to Bergmann's silence. We are disinclined to agree with the district court because even if the jury expected presentation of an alibi defense, Bergmann offers no reason why we should assume the jury expected Bergmann himself to testify in support of this defense. The prosecutor's remark was neutral as to the particular witnesses for the alibi defense. The jury could just as easily have assumed other witnesses would testify as to Bergmann's whereabouts at the time of the crime. In fact, Bergmann named two witnesses other than himself in his notice of alibi. However, we need not consider whether the prosecutor's statement actually referenced Bergmann's silence because even if it did, Bergmann's argument fails at the second prong of the test: the isolated remark did not invite the jury to infer Bergmann's guilt from his failure to testify or his failure to present an alibi defense. Moreover, any misimpression or ex-

---

4. However, the statute expressly does not prohibit the state from calling designated alibi witnesses for any other purposes.

pectation that the abbreviated reference to the defense may have left with the jury could have been eliminated with a curative instruction, which Bergmann declined.

■ Nor did the state violate Bergmann's constitutional rights by calling one of his designated alibi witnesses during its case-in-chief. The prosecutor called Betty Scott, Bergmann's mother, to show that Bergmann had an opportunity to commit the crime, that he had the requisite intent, and that he lied (presumably about his alibi defense). The prosecution's questioning of Betty Scott focused on her son's absence from her home at the time of the crime. Scott also testified about her telephone records, which established calls made from her home to Trawitzki's home at various times, and about her son's habit of carrying guns with him whenever he left the house. Although it appears to have been one of the prosecutor's purposes to score a preemptive strike against an alibi defense, at no time did she actually use Scott to impeach Bergmann about his alibi. Indeed, neither the prosecutor nor Betty Scott ever even mentioned Bergmann's possible alibi defense. Hence, the use of Scott as a witness does not implicate Bergmann's constitutional rights.

■ Bergmann next argues that the evidence was insufficient to convict him and therefore his conviction violates his due process rights. In order to succeed on an insufficiency argument, Bergmann must prove that, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Patterson*, 23 F.3d 1239, 1243–44 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 527, 130 L.Ed.2d 431 (1994). Trawitzki's testimony alone is enough to support the convictions but Bergmann argues that her testimony is incredible as a matter of law. Bergmann acknowledges that to show that a witness is incredible as a matter of law, he must demonstrate either that it was physically impossible for the witness to observe that which she claims occurred or that it was impossible under the

laws of nature for the occurrence to have taken place at all. *United States v. Blackman*, 950 F.2d 420, 424 (7th Cir.1991).

■ Bergmann argues that Trawitzki's testimony that her screams were drowned out by the air conditioners of nearby houses was incredible as a matter of law because the high temperature that day was 71 degrees. Bergmann extrapolates from this alleged inconsistency that none of Trawitzki's testimony about the attack could be believed by a rational trier of fact. We disagree. It is certainly not impossible that neighbors were using air conditioners that night. Further, the jury was free to believe part of Trawitzki's testimony and to reject other parts. *See Patterson*, 23 F.3d at 1244 n. 4. A minor inconsistency (if it may even be called an inconsistency) in an ancillary part of Trawitzki's testimony does not render the rest of her testimony incredible as a matter of law. *Blackman*, 950 F.2d at 424. Any inconsistency merely creates a credibility issue for the jury to resolve. *Patterson*, 23 F.3d at 1244–45.

■ We also reject Bergmann's claim that there was insufficient evidence of great bodily injury to convict him of first degree reckless injury. Wisconsin law requires for first degree reckless injury a showing of conduct that creates an unreasonable and substantial risk of death or great bodily harm. Wis.Stat. § 939.24(1). "Great bodily harm" includes injury which creates a substantial risk of death, which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury. Wis. Stat. § 939.22(14). Bergmann argues that during his sentencing hearing, the trial court made a "factual finding" that Trawitzki's injuries were not serious. In context, the court's remarks indicated that it was inclined to reduce Bergmann's sentence because he had an opportunity to kill Trawitzki and did not. This hardly constitutes a factual finding that Trawitzki's injuries were not sufficient to meet the standard for first degree reckless injury.

■ Trawitzki herself testified to the extent of her injuries, and a doctor corroborated this testimony. The State introduced photographs of the injuries as well. The injuries, as we have noted, included a broken nose, bite wounds, injury to her arm causing her to lose its use for a week, serious bruises to the head and back, and injury to the right eye which resulted in long term impairment of vision. The eye injury alone would appear to qualify as great bodily harm under the statute. The jury had more than enough evidence of serious bodily injury to conclude that Bergmann was guilty of first degree reckless injury.

■ Bergmann argues next that the trial court improperly enhanced his sentence for exercising his fifth amendment right to remain silent when it considered his lack of remorse in setting the sentence. It is well established that a sentencing court may consider lack of remorse when imposing a sentence. *See United States v. Johnson,* 903 F.2d 1084, 1090 (7th Cir.1990) (and cases cited therein). Yet, as we recognized in *Johnson,* sometimes it is difficult to distinguish between punishing a defendant for remaining silent and properly considering a defendant's failure to show remorse in setting a sentence. *Id.*

■ However, we are convinced here that the trial court was not punishing Bergmann for remaining silent but rather was properly considering his lack of remorse as one factor among many in judging Bergmann to be a dangerous person. Even without consideration of the lack of remorse, the trial court had compelling reasons to believe that Bergmann was dangerous, including the fact that he carried guns with him whenever he left home, and the fact that a pre-sentence psychological examination revealed Bergmann to have anti-social and narcissistic personality disorders. The court appears to have properly exercised its discretion by weighing Bergmann's lack of a criminal record, his dangerous propensities, his need for rehabilitation and the gravity of the offense in setting its sentence. There is absolutely no evidence that the court enhanced Bergmann's sentence for exercising his right to remain silent. Therefore, we reject Bergmann's claim that the sentence violated his fifth amendment right to remain silent.

■ We also reject Bergmann's final claim that his attorneys' representation at trial and in post-conviction proceedings was so deficient that his sixth amendment right to the effective assistance of counsel was violated. To prevail on this claim, Bergmann must show that (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984); *Galowski v. Murphy,* 891 F.2d 629, 635 (7th Cir. 1989), *cert. denied,* 495 U.S. 921, 110 S.Ct. 1953, 109 L.Ed.2d 315 (1990).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction.... Because of the difficulties inherent in the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Galowski,* 891 F.2d at 639 (quoting *Strickland* ).

■ Bergmann cites thirteen separate instances where his trial counsel was ineffective. Eleven of the thirteen relate to counsel's failure to cross-examine Trawitzki on several alleged inconsistencies in her testimony, and the vast majority of these relate to collateral issues, and not to the substance of the crimes. Bergmann's trial counsel testified that Trawitzki was a very sympathetic witness (an assessment with which the trial court heartily agreed) and that he decided the best strategy would be to get her off the stand quickly and to impeach her through other witnesses to the extent possible. Bergmann offers no reason why this decision did not fall within the wide range of reasonable professional assistance. On the con-

trary, deciding not to cross-examine this sympathetic witness was well within the realm of sound trial strategy, and we will not, in hindsight, second-guess that decision. *See Six v. Delo,* 885 F.Supp. 1265, 1279–80 (E.D.Mo.1995).

Nor will we second-guess trial counsel's decision not to call Bergmann's step-father, William Scott, to testify that Bergmann's guns were at home at the time of the crime. As a matter of trial strategy, counsel could well decide not to call family members as witnesses because family members can be easily impeached for bias. *See United States ex rel. Smith v. Lane,* 794 F.2d 287, 292–93 (7th Cir.1986). Bergmann's counsel testified that he decided not to call William Scott to testify about the guns because William Scott failed to mention the guns at a preliminary hearing. William Scott had further testified at the preliminary hearing that Bergmann left the house at a time which was consistent with Trawitzki's version of events. Counsel decided that in light of the preliminary hearing, William Scott could be a "dangerous" witness for Bergmann, and he therefore declined to call him. Such a considered decision is also well within the realm of sound trial strategy.

Bergmann also complains that his trial counsel failed to question Trawitzki's neighbor about whether his air conditioner was turned on during the time that Trawitzki claimed her screams were drowned out by neighbors' air conditioners. Counsel cannot be faulted for failing to exhaust this collateral issue. He introduced evidence about the relatively cool temperature that day in order to impeach Trawitzki. And even if counsel's failure to pursue this point fell outside the realm of sound trial strategy, Bergmann has utterly failed to show that the result of the proceeding would have been different had counsel questioned the neighbor on this issue. In fact, Bergmann fails to show that the neighbor would have testified that the air conditioner was turned off. Attempting to further impeach Trawitzki on this collateral issue could not have changed the result where the rest of the evidence overwhelmingly supported Trawitzki's version of events on the substantive issues.

Bergmann also faults his trial counsel for failing to object to the introduction of prejudicial evidence, including a photograph of Bergmann with long hair at the time of his arrest, and testimony that the bullets in Bergmann's gun were unusually dangerous hollow point bullets. The photograph was prejudicial, Bergmann argues, because it suggested to the jury that he had changed his appearance and was somehow trying to be deceptive about his appearance. Even if the photograph was irrelevant, its uneventful introduction through the arresting officer raised no issue of deception about Bergmann's appearance. Failing to object to this evidence was well within the ambit of sound trial strategy.

We are mystified by Bergmann's claim that his counsel was ineffective for failing to object to testimony regarding the dangerousness of the bullets found in Bergmann's gun. Our review of the record reveals that Bergmann's counsel objected strenuously to the introduction of this testimony in a motion in limine which was denied by the trial court. *See* Record, Loose Pleadings, Volume 1, Exhibit H at 28–30. Trial counsel renewed this objection during the testimony itself and, at that time, the court sustained the objection as to part of the testimony. Bergmann is simply incorrect about counsel's failure to object.

Finally, we reject Bergmann's contention that his post-conviction counsel was ineffective for failing to raise the argument that Bergmann's fifth amendment rights were violated by the state's use of one of his designated alibi witnesses. As we discussed above, the prosecution did not use Betty Scott to impeach Bergmann on his alibi, but rather to show that he had the opportunity to commit the crimes. Thus, the failure of Bergmann's post-conviction counsel to raise this argument does not constitute ineffective assistance of counsel.

AFFIRMED