85 F.3d 631
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Joe David GALMORE, Petitioner-Appellant,
v.
Craig A. HANKS, Superintendent, Respondent-Appellee.
 No. 95-2765.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 24, 1996.*
Decided May 13, 1996.
 
 Before FAIRCHILD, COFFEY and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 In 1982, Joe David Galmore was convicted by a jury in an Indiana state court of battery and criminal deviate conduct, committed against a fellow inmate at the Madison County Jail. Galmore was also found by the jury to be a habitual offender. He was sentenced to a total of fifty-eight years in prison. On direct appeal, Galmore's convictions were affirmed. Galmore v. State, 467 N.E.2d 1173 (Ind.1984). In 1994, Galmore filed a habeas petition pursuant to 28 U.S.C. § 2254 in federal district court, raising several grounds that were raised in his state appeal. The district court denied the petition, and Galmore timely appeals. We affirm.
 
 
 2
 We first note that the federal courts have jurisdiction under 28 U.S.C. § 2254(a) to consider Galmore's challenges to his battery conviction. The state has asserted, both below and again on appeal, that Galmore has finished serving his eight-year battery sentence, and is now serving his consecutive twenty-year criminal deviate conduct sentence, enhanced to fifty years by the habitual offender determination.[1] Assuming that the state's characterization is correct, Galmore's battery sentence expired at the latest in 1990, four years prior to the filing of Galmore's habeas petition. Nevertheless, Galmore was still "in custody" for the battery conviction when he filed his habeas petition, since invalidation of the battery conviction would necessarily advance the date of his eligibility for release under the criminal deviate conduct sentence. Garlotte v. Fordice, 115 S.Ct. 1948 (1995). We therefore have jurisdiction to address Galmore's challenges to his battery conviction, as well as to his criminal deviate conduct conviction and to the finding that he was an habitual offender.
 
 
 3
 Galmore's first argument is that his conviction for battery violates double jeopardy, alleging that the battery charge was a lesser included offense of the criminal deviate conduct charge. See Illinois v. Vitale, 447 U.S. 410 (1980); Brown v. Ohio, 432 U.S. 161 (1977). Specifically, Galmore claims that the two charges arose out of the same set of facts, occurred at the same time and place, and involved identical parties. However, the Supreme Court of Indiana concluded on direct appeal, in a finding supported by the record, that "there were two distinct time periods involved in the actions which were the basis of the instant offenses. The victim was first subjected to a severe beating by several inmates including defendant and was later forced to engage in criminal deviate conduct by defendant." Galmore, 467 N.E.2d at 1175. Moreover, under the Blockburger test for double jeopardy, we need only examine the statutory elements of the charged offenses, not the facts of the case. See United States v. Dixon, 113 S.Ct. 2849 (1993); Blockburger v. United States, 284 U.S. 299, 304 (1932). If each statutory provision requires proof of any element not contained in the other, then double jeopardy does not bar punishment for both offenses. Rutledge v. United States, 116 S.Ct. 1241, 1246 (1996). The battery statute (Ind.Code Ann. § 35-42-2-1 (West 1986)) applied to "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner ...", while the criminal deviate conduct statute (Ind.Code Ann. § 35-42-4-2 (West 1986)) applied to "[a] person who knowingly or intentionally causes another to perform or submit to deviate sexual conduct...."[2] Each statute contains elements that the other does not--for instance, to commit battery, one must touch another person, while to commit criminal deviate conduct, one must cause another (not necessarily by contact) to perform or submit to deviate sexual conduct. It is clear then that these two statutes do not define battery as a lesser included offense of criminal deviate conduct under the Blockburger test. In sum, neither the law nor the facts support Galmore's claim that double jeopardy bars punishment for both battery and criminal deviate conduct in his case.
 
 
 4
 Galmore next argues that his convictions violate due process because they are not supported by sufficient evidence. In order to succeed on an insufficiency of the evidence claim, Galmore must prove that, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Bergmann v. McCaughtry, 65 F.3d 1372, 1378 (7th Cir.1995), cert. denied, 64 U.S.L.W. 3707 (U.S. Apr 22, 1996) (No. 95-8024). As to the battery charge, the victim testified that a group of inmates, including Galmore, taunted and then beat him. Other members of that group also testified to these events. The inconsistencies among the witnesses' testimony which Galmore has noted--such as whether Galmore hit the victim with fists or an open hand--do not extend to the point where a rational juror would have to doubt that Galmore participated in the beating of the victim. See United States v. Wilson, 31 F.3d 510, 514 (7th Cir.1994) (holding that the jury is entitled to convict the defendant based on inconsistent testimony by prosecution witnesses, so long as the evidence of the core events of the crime is not inherently unbelievable or improbable). We conclude that there is sufficient evidence to support the battery conviction.
 
 
 5
 The criminal deviate conduct charge is supported primarily by the victim's testimony that Galmore forced him to submit to anal intercourse. Galmore attempts to show that this testimony was incredible as a matter of law. To do so, he must demonstrate that it was physically impossible either for the witness to discern that which he claims occurred or for the occurrence to have taken place at all. See Bergmann, 65 F.3d at 1378. Galmore contends that the state's own medical expert, Dr. Beeson, testified to the lack of physical evidence of anal intercourse, and to his conclusion that anal intercourse had not occurred, based upon his observations of the victim. But while Dr. Beeson did testify as to the lack of physical evidence, he did not state a conclusion that anal intercourse had not occurred. When asked on cross-examination "can you say that anal intercourse occurred" to the victim, Dr. Beeson responded "no". On re-direct examination, Dr. Beeson explained that he could neither say to a reasonable medical certainty that anal intercourse had not occurred nor rule out the possibility that it had occurred, and that basically he could not render an opinion based upon his observations. Dr. Beeson also stated that he would not consider his findings in any way unusual if he had known of an allegation that anal intercourse had occurred the night before. We conclude that the testimony of Dr. Beeson does not indicate that the victim's testimony was incredible as a matter of law. The jury was entitled to convict Galmore based solely on what it considered the victim's credible testimony. Id.
 
 
 6
 Galmore next claims that his right to a fair trial under the Due Process Clause was violated when the trial judge allowed the victim--a private in the army at the time of the trial--to testify in full military uniform. Galmore makes no showing that the victim was not entitled to wear the uniform. Moreover, he has presented only speculation in support of his conclusion that the uniform enhanced the victim's credibility as a witness. For all we know, the jurors may have been unimpressed or even negatively affected by the military uniform. Even assuming arguendo that permitting a witness to testify in full military uniform can be an error of constitutional proportions in certain circumstances, we have no reason to believe that such an error occurred in Galmore's case.
 
 
 7
 Galmore claims that his right to due process was violated when the trial judge gave an aiding and abetting instruction, given that he had been charged as a principal in both crimes, and given that there was little or no evidence presented that anyone else was involved in committing the crimes. This claim is not sustainable as to the battery charge in light of the evidence of other participants in the beating, but might arguably have a factual basis in the record with regard to the criminal deviate conduct charge. Cases from other circuits have recognized the possibility of a due process claim based on an aiding and abetting instruction that was not supported by sufficient evidence. See Quigg v. Crist, 616 F.2d 1107, 1111-12 (9th Cir.) (citing Carothers v. Rhay, 594 F.2d 225, 229 (9th Cir.1979)), cert. denied, 449 U.S. 992 (1980); Stone v. Wingo, 416 F.2d 857, 863-67 (6th Cir.1969). However, the viability of any such due process claim is doubtful in light of Griffin v. United States, 502 U.S. 46 (1991). We cannot know for certain whether the jury convicted Galmore as a principal or as an aider and abettor; the latter conclusion would be irrational if there were no evidence to support it, as Galmore asserts. But a general jury verdict that could have been based on either of two submitted grounds is not invalid under the Due Process Clause because one of the grounds is not supported by sufficient evidence, so long as the other ground is supported by sufficient evidence. Griffin, supra. In Galmore's case, as explained earlier, there is sufficient evidence to support his conviction as a principal on the criminal deviate conduct charge. Therefore, the aider and abettor instruction, even if unsupported by any evidence as Galmore claims, did not violate Galmore's due process rights.
 
 
 8
 Galmore contends that the state failed to prove that he had been convicted for two prior crimes, or that those prior crimes were felonies, and therefore the finding that he was a habitual offender violated due process. The first claim, that the state did not prove the existence of the prior crimes, is refuted by the record: the state introduced into evidence certified[3] copies of a 1965 Illinois conviction for burglary and theft, for which Galmore was sentenced to two-and-a-half to five years in prison, and a 1970 Illinois conviction for voluntary manslaughter, for which Galmore was sentenced to twelve to twenty years in prison. As for Galmore's second claim, that the state did not prove that the crimes were felonies, Indiana law defined a "felony conviction" for purposes of habitual criminal offender status, in relevant part, as "a conviction, in any jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one (1) year". Ind.Code Ann. § 35-50-2-1 (West 1986). Regardless of whether other states might define felony convictions differently, Indiana used that definition, and clearly, both of Galmore's prior convictions satisfied the definition. The finding that Galmore was a habitual criminal offender did not violate due process.
 
 
 9
 Finally, Galmore claims that due process was violated when the trial judge denied his request to call a witness, Mr. Paddock, who would have testified to and introduced evidence of a notice of a civil suit brought by the victim against the Madison County Commissioners concerning the incidents on which Galmore's criminal charges were based. According to Galmore, the testimony and evidence that Mr. Paddock would provide was necessary to an adequate showing of the victim's interest or bias. However, the jury learned on cross-examination of the victim that the victim had, by private counsel, notified the county commissioners of his intention to hold them liable for the injuries that he sustained while in jail. Though Mr. Paddock's testimony and evidence might have been helpful to Galmore's case, the judge could reasonably decide that they would have been cumulative. State law evidentiary rulings provide a basis for a due process claim on habeas only if they deny a fundamentally fair trial. Milone v. Camp, 22 F.3d 693, 702 (7th Cir.1994) (citing Haas v. Abrahamson, 910 F.2d 384, 389 (7th Cir.1990)), cert. denied, 115 S.Ct. 720 (1995). We conclude that exclusion of Mr. Paddock's testimony and evidence did not deny Galmore a fair trial.
 
 
 10
 For the foregoing reasons, the judgment is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Although it affirmed Galmore's convictions, the Indiana Supreme Court remanded for correction of the sentence with regard to the habitual offender status. 467 N.E.2d at 1179. Specifically, the trial judge was required to choose which of the two consecutive sentences--the battery sentence or the criminal deviate conduct sentence--to enhance with the habitual offender determination. Id. The record does not contain any official document showing what happened at resentencing
 
 
 [2]
 Both statutes contain additional elements, but the ones we have listed suffice to show that there is no double jeopardy problem
 
 
 [3]
 Galmore argues that these certifications were insufficient under Collins v. State, 415 N.E.2d 46 (Ind.), cert. denied, 451 U.S. 991 (1981). Even assuming Galmore is correct, habeas relief does not lie for errors of state law. Burris v. Farley, 51 F.3d 655, 659 (7th Cir.1995) (citing cases). As long as there was sufficient evidence of the convictions such that a reasonable juror could find that the convictions were valid, we will uphold a finding of their validity. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). Here, the convictions were certified by clerks of court, and the records as a whole certified by other state officials; this is more than enough evidence of genuineness to satisfy Jackson