101 F.3d 110
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Delbert MIMMS, Petitioner-Appellant,
v.
Al C. PARKE,[1] Respondent-Appellee.
 No. 95-1907.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 2, 1996.
Decided Nov. 8, 1996.
 
 Before POSNER, Chief Judge, and BAUER and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Delbert Mimms appeals the district court's judgment denying his petition filed pursuant to 28 U.S.C. § 2254. Mimms argues that he was denied due process because he was convicted and sentenced in proceedings presided over by a master commissioner instead of a judge, and that the evidence was insufficient to support his conviction. We affirm.
 
 
 2
 Mimms was arrested in September 1989 on state charges of attempted murder and possession of a handgun without a license. He was tried for these charges on June 4, 1990, in Marion (Ind.) Superior Court. The trial took place before a jury, and was presided over by Master Commissioner Craig O. Wellnitz. The jury found Mimms guilty on both counts. On June 29, 1990, Master Commissioner Wellnitz conducted a sentencing hearing and decided to sentence Mimms to a thirty-year prison term on the attempted murder conviction and a concurrent one-year term on the handgun conviction. The record does not indicate any objection by Mimms or his counsel to Commissioner Wellnitz's participation at any point during the proceedings.
 
 
 3
 Mimms appealed. The Court of Appeals of Indiana did not address the merits of the appeal, "because the record reveals that Master Commissioner Wellnitz presided at the trial and that the purported judgment of conviction and the commitment were signed by him as Master Commissioner. He did not submit proposed findings and conclusions for approval by the regular judge nor did the regular judge adopt the purported judgment entered by Commissioner Wellnitz."[2] The court concluded that "[t]here has been no judgment entered in this case. The purported appeal is therefore premature and is now dismissed." Id. (citations omitted).
 
 
 4
 The Indiana Court of Appeals granted Mimms's petition to withdraw the record of proceedings for entry of and certification of judgment. On September 9, 1991, an order entering judgment of conviction and a sentencing order were filed in the Marion Superior Court. In both documents, Commissioner Wellnitz signed a recommendation for the judgment, and Judge John R. Barney, Jr. (whom the parties agree was the regular judge of the Marion Superior Court) signed an order for entry of the judgment.
 
 
 5
 Mimms again appealed. Mimms's appellate brief set out the history of the prior dismissal of the appeal and the subsequent entry of judgment, but did not raise any claims based on Commissioner Wellnitz's participation in the proceedings. Instead, he raised the same claims as in his original attempted appeal. The Court of Appeals rejected his arguments that the evidence was insufficient to support his conviction. In two pro se petitions to transfer filed with the Supreme Court of Indiana, Mimms contended that he was entitled to a new trial, because only a judge, and not a master commissioner, had authority to preside over a trial. Both petitions were denied by the Supreme Court of Indiana.[3]
 
 
 6
 Mimms then filed the instant habeas petition, which the district court denied on the merits. The state did not contend before the district court, and does not contend on appeal, that Mimms failed to exhaust state court remedies. Under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214, "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3) (as amended Apr. 24, 1996). Moreover, the amended § 2254(b) states that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (as amended Apr. 24, 1996). We need not decide whether these provisions are applicable to Mimms, because even under the old § 2254(b) we can affirm the denial of a nonmeritorious claim whether or not it has been exhausted. Granberry v. Greer, 481 U.S. 129, 135 n. 7 (1987) ("it is appropriate for the court of appeals to dispose of nonmeritorious petitions without reaching the nonexhaustion issue"); Snyder v. Sumner, 960 F.2d 1448, 1454 n. 3 (9th Cir.1992); Palmariello v. Superintendent of M.C.I. Norfolk, 873 F.2d 491, 493 n. 1 (1st Cir.), cert. denied, 493 U.S. 865 (1989). We thus turn to the merits.
 
 
 7
 It would not appear to offend due process for a "judge" in all but name to preside over judicial proceedings. See Ward v. Village of Monroeville, Ohio, 409 U.S. 57 (1972) (a mayor, if disinterested and impartial, may serve as a judge); cf. Gomez v. United States, 490 U.S. 858, 876 (1989) (a defendant has a basic right "to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside"). By contrast, there might conceivably be a problem if, for example, a random passer-by was plucked off the street and labeled a "judge". Under the Indiana law regulating the Marion Superior Court at the time of Mimms's trial and sentencing, a master commissioner was an official appointed by the court, and possessing the powers of a magistrate. Ind.Code 33-5-35.1-8(a), (f). Among other powers, the master commissioner could conduct pre-trial hearings and the trial itself, and could receive a jury's verdict. Ind.Code 33-4-7-4(10), (11), (12). He could not, however, conduct a sentencing hearing. Ind.Code 33-4-7-8. He also could not enter a final appealable order unless sitting as a judge pro tempore or a special judge, Ind.Code 33-4-7-7; only the court could enter such an order, Ind.Code 33-4-7-8, as it eventually did in Mimms's case. It appears that the due process problem in Mimms's case, if any, relates not to the trial or the final order, but to the sentencing proceedings.
 
 
 8
 Mimms relies on Supreme Court cases discussing powers allowed to a federal magistrate, an official similar to a master commissioner. The Supreme Court has never held in these cases that the delegation of a certain power to the federal magistrate violates due process. See Peretz v. United States, 501 U.S. 923, 937 (1991); Gomez, 490 U.S. at 872 n. 25; United States v. Raddatz, 447 U.S. 667, 677-81, 684-86 (1980) (majority and concurring opinions). Moreover, the Court has held that a federal magistrate has jurisdiction to conduct jury selection when the defendant fails to object. Peretz, 501 U.S. at 933-36; see also United States v. Wey, 895 F.2d 429 (7th Cir.) (cited with approval in Peretz, 501 U.S. at 933), cert. denied, 497 U.S. 1029 (1990). Peretz explained that just as "litigants may waive their personal right to have an Article III judge preside over a civil trial [, ...] [t]he most basic rights of criminal defendants are similarly subject to waiver." Peretz, 501 U.S. at 936-37 (citing cases).[4] The Court made clear that "waiver" in this context means "the failure to make timely assertion of the right." Id. (quoting Yakus v. United States, 321 U.S. 414, 444 (1944)). Because Mimms failed to object to trial or sentencing by a master commissioner, any right he might conceivably have had to a judge was waived. Cf. Floyd v. State, 650 N.E.2d 28, 32 (Ind.1994) (under Indiana law, "the authority of the officer appointed to try a case" does not affect "the jurisdiction of the court," and "the failure of a party to object to the authority of a court officer to enter a final appealable order waives the issue for appeal").
 
 
 9
 This leaves only Mimms's sufficiency-of-the-evidence claim. Mimms notes that the only eyewitness to the crime, LaJoy Andrews, was only about fifteen years old when she saw Mimms's beating his victim. On the day of the crime, Andrews had had her wisdom teeth removed and was on medication. At trial, she testified that the person she saw looked darker in complexion than Mimms did in the courtroom, and had a "curl" which Mimms did not have in the courtroom. She also testified that the gun she saw Mimms using appeared different from the gun introduced by the state as being at Mimms's home. Mimms appears to conclude that Andrews's testimony was not sufficiently credible.
 
 
 10
 Andrews's youth, the pain from her operation, and her medication,[5] even in combination, do not make her observation of the crime physically impossible or impossible under the laws of nature. See Bergmann v. McCaughtry, 65 F.3d 1372, 1378 (7th Cir.1995), cert. denied, 116 S.Ct. 1552 (1996). A rational jury could find Andrews's testimony credible, i.e., that her age and physical condition did not prevent her from making a reasonably accurate observation of Mimms's commission of the crime. Andrews identified Mimms in the courtroom as the same man she saw hitting his victim at the scene. The minor differences in Mimms's appearance on the two occasions do not make Andrews's identification incredible as a matter of law, especially since Andrews attributed the difference in complexion to the time of night the first time she saw him. Finally, Mimms does not show how the testimony about the gun could have fatally undermined the state's case against him. Whether the state introduced into evidence the actual gun used by Mimms to beat his victim, or instead an unrelated gun, it does not change the fact that the jury could still convict Mimms based on Andrews's testimony that she heard Mimms threaten to kill the victim and then saw him beat the victim ten times with a gun.
 
 
 11
 The judgment is AFFIRMED.
 
 
 
 [1]
 Pursuant to Fed.R.App.P. 43(c)(1), Al C. Parke is substituted for Robert A. Farley as the appellee
 
 
 [2]
 The court noted that "[n]o where does the record demonstrate that Commissioner Wellnitz was appointed as Judge Pro Tempore for any of the proceedings. To the contrary, the record at all stages of the proceedings reflects that Mr. Wellnitz was sitting as Master Commissioner, not as Special Judge or as Judge Pro Tempore." Id. at n. 1
 
 
 [3]
 The first petition to transfer, filed in April 1992, was denied in May 1992. In October 1993, Mimms filed a pro se pre-appeal statement with the Court of Appeals of Indiana. The pre-appeal statement was denied, and the attempted appeal dismissed, in November 1993. Mimms then was permitted by the Supreme Court of Indiana to file a "petition for transfer late"-- i.e., his second petition to transfer. This petition was denied in February 1994
 
 
 [4]
 The only procedural protections which the Court envisioned as potentially non-waivable were the structural protections provided by Article III of the Constitution. Id. at 937 (citing Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 850-51 (1986). Even assuming (perhaps dubiously) that the federal constitution protects state separation-of-powers schemes, no such protection is needed in Mimms's case; a master commissioner is a judicial appointee, rather than an administrative or legislative appointee who might encroach on the judiciary. See Ind.Code 33-5-35.1-8(a), (f)
 
 
 [5]
 Andrews testified that her grandmother had given her "pills that make you sleep," and believed they were Advil or "Arvypropen" (presumably ibuprofen). Andrews also testified on cross examination that she was not asleep when the incident began, though when impeached with her prior statement that she was asleep before hearing a holler and a scream for help, she responded that she might have been asleep but did not remember. There was no evidence presented on the effect the medication might have had on Andrews's ability to observe